# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ARCHIE RACHEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-14-655-R** |
| | ) | |
| **JEFFREY TROUTT, et. al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Archie Rachel, a state prisoner appearing *pro se*, brings this action pursuant to 42 U.S.C. § 1983, alleging a violation of his constitutional rights. The matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). Before the Court is Defendants' Amended Motion to Dismiss or in the alternative Motion for Summary Judgment (ECF No. 35) to which Plaintiff has responded, Defendants have replied and Plaintiff has sur-replied. (ECF Nos. 43, 45, 49). Also before the Court is Plaintiff's Petition for Emergency Injunction (ECF No. 17), Plaintiff's Motion for Extension of Time to Conduct and Complete Discovery (ECF No. 36) and Plaintiff's Motion to Appoint Expert Witness (ECF No. 40). The motions are at issue and ready for disposition. For the reasons set forth below, it is recommended that Defendants' Amended Motion to Dismiss/Motion for Summary Judgment be **GRANTED** and that each of Plaintiff's Motions be **DENIED**.

## I.     BACKGROUND AND ISSUES PRESENTED

Plaintiff is an inmate confined at James Crabtree Correctional Center ("JCCC") in Helena, Oklahoma. By this action, Plaintiff sues Katryna Frech, R.N., formerly

Correctional Health Services Administrator at JCCC[1], Jeff Troutt, D.O., Chief Medical Officer at JCCC, Janet Dowling, Warden at JCCC, and Felicia Harris, Librarian at JCCC. (ECF No. 1:1-3). By his Complaint (ECF No. 1), Plaintiff purports to set forth three causes of action.

In Count I, Plaintiff alleges Defendants Troutt and Frech were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Specifically, Plaintiff contends Defendants Troutt and Frech have failed to provide him with prompt and adequate medical care. (ECF No. 1:4-5). Plaintiff alleges that he is forced to wait outside in the 'pill line' every day in an "open, uncover[e]d area" in order to receive medication. (ECF No. 1:5). Based on Plaintiff's advanced age of 70-years-old and that he frequently uses a wheelchair, he argues this causes unnecessary pain and suffering. (ECF No. 1:5).

In further support of this claim, Plaintiff states that he suffers from a gastrointestinal condition, acid reflux, indigestion, heart problems, high blood pressure, badly swollen feet, chest pains, shoulder problems and severe headaches. (ECF No. 1:5). Plaintiff alleges that upon his transfer to JCCC, Dr. Troutt discontinued Plaintiff's previous medications and that this is causing him heartburn, muscle pain and weakness in his hands, and urinary incontinence. (ECF No. 1:2, 5-6).

In Count II, Plaintiff contends that Defendant Dowling, as Warden of JCCC, has condoned the actions underlying his constitutional claims and is thereby liable under the

---

[1] Defendant Frech was no longer employed with JCCC at the time of attempted service of Plaintiff's Complaint. As a result, Defendant Frech was only recently served and has not yet entered a formal appearance in this lawsuit. (ECF No. 21, 32, 38, 42, 47-48, 51).

theory of supervisor liability. (ECF No. 1:7). Finally, in Count III, Plaintiff alleges that Defendants Dowling, Frech and Harris have denied his state law right to a fair and adequate grievance procedure. He also states that the JCCC Law Library is only open 2½ hours per week and that hinders his ability to exhaust his administrative procedures because inmates are required to submit Requests to Staff to the librarian, and grievance and grievance appeal forms are kept only in the library. (ECF No. 1:8-9).

## II. FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A. Standard of Review for Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); *see also Gee v. Pacheco*, 627 F.3d 1178, 1184 (10th Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

## B. Claims Subject to Dismissal

### 1. Claims Against Defendants in their Official Capacities

In his Complaint, Plaintiff states that he is naming Defendants in both their individual and official capacities and is seeking compensatory and punitive damages, as well as declaratory and injunctive relief. (ECF No. 1:3, 12). In their Motion to Dismiss, Defendants contend that as Oklahoma Department of Corrections ("ODOC") employees, official capacity claims for which Plaintiff is seeking monetary damages must be dismissed as the claims are barred by Eleventh Amendment immunity. (ECF No. 35:11-12). Indeed, Plaintiff appears to concede in his response to Defendants' Motion that defendants are immune from suit for money damages in their official capacities. (ECF No. 43:4).

"To state a claim under [42 U.S.C.] § 1983 a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Neither a state, a state agency, nor an official of the State acting in his or her official capacity, is a "person" for purposes of § 1983. *See Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 64, 71 (1989). *See also Branson School District RE-82 v. Romer*, 161 F.3d 619, 631 (10th Cir. 1998) (noting that when suit is brought against a state official in his official capacity, the real party in interest is the state). Thus, Eleventh Amendment sovereign immunity precludes suits against states, state agencies and state officials sued in their official capacities.

Unlike other jurisdictional issues, a State may waive the defense of sovereign immunity. The State of Oklahoma has not, however, waived its sovereign immunity defense against § 1983 claims brought in federal district court cases. *See Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir. 1994). It is therefore recommended that all official capacity claims seeking monetary damages against Defendants Troutt, Dowling and Harris be dismissed with prejudice. Additionally, though Defendant Frech has not been served to date, the official capacity claims seeking monetary damages against her should be dismissed on screening for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii) (pertaining to actions brought in forma pauperis).

### 2. Count I: Eighth Amendment claim against Defendant Frech

Plaintiff asserted his Eighth Amendment claim in Count I against Defendants Troutt and Frech. According to the Complaint, Defendant Frech "is a nurse, the facility Health Service Administrator (HSA) and is the reviewing authority for medical issue grievances at JCCC." (ECF No. 1:4). Plaintiff's specific allegations regarding Defendant Frech pertain only to Plaintiff's attempts to utilize the grievance process or to conduct medical research in the law library, and not to his medical care. (ECF No. 1:4-5; ECF No. 43:24). Allegations against a defendant based solely on his or her denial or rejection of a Request to Staff, grievance or grievance appeal does not state a claim upon which relief may be granted. Merely denying grievances or requests to staff does not constitute "personal participation" that will support a cause of action under § 1983. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). While Plaintiff does attempt

to assert a distinct legal claim in Count III related to the grievance process, as discussed below, his allegations in that regard do not implicate a constitutional right. As such, it is recommended that Plaintiff's Eighth Amendment claim against Defendant Frech be dismissed on screening based on her lack of personal participation. *See* 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii) (pertaining to actions brought in forma pauperis).

### 3. Count III: Right to Grievance Process

In Count III, Plaintiff contends that Defendants Frech, Dowling and Harris "denied Plaintiff his state law right to a fair and adequate grievance procedure." (ECF No. 1:8). In his Response to Defendants' dispositive motion, he clarified this claim by further explaining that his claim was not based on a lack of access to the courts but instead on his allegation that Defendants interfered with and obstructed his attempts to exhaust administrative remedies. (ECF No. 43:39-40).

Prison grievance procedures do not create a protected liberty interest and, therefore, do not implicate a prisoner's due process rights. *Murray v. Albany Cnty. Bd. of Cnty. Comm'rs*, No. 99-8025, 2000 WL 472842, at *2 (10th Cir. Apr. 20, 2000). ("[P]rison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.'") (quoting *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)). Further, a state's voluntary provision of an administrative grievance process does not create a liberty interest in that process. *Boyd v. Werholz*, 443 F. App'x 331, 332 (10th Cir. 2011) (citing *Bingham v. Thomas,* 654 F.3d 1171, 1177–78 (11th Cir. 2011) (observing that inmates have no

constitutionally-protected liberty interest in access to prison grievance procedure); *Buckley,* 997 F.2d at 495 ("A prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest ....")). *See also Spry v. McKune*, 479 F. App'x 180, 181 (10th Cir. 2012) (affirming district court's dismissal of plaintiff's due process claim premised upon unavailability of administrative remedy for failure to state a claim upon which relief can be granted); *Anderson v. Colo. Dep't of Corr.*, No. 98-1477, 1999 WL 387163, at *2 (10th Cir. June 14, 1999) (holding that a state inmate's § 1983 "allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner").

This is not to say that a correctional facility can freely obstruct an inmate's ability to use the grievance process. "Where prison officials thwart or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). However, as established above, inmates do not have a protected liberty interest in pursuing formal grievance procedures and therefore, any separate legal claim based on the same inherently fails. Accordingly, the undersigned recommends that Defendants' Motion to Dismiss Plaintiff's Count III be granted. Additionally, this claim as asserted against Defendant Frech should be dismissed on screening for failure to state a claim upon which relief may be granted.

*See* 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii) (pertaining to actions brought in forma pauperis).

## III.  SUMMARY JUDGMENT AS TO EIGHTH AMENDMENT CLAIM

### A.  Standard of Review for Summary Judgment

Summary judgment shall be granted where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. *Calhoun v. Gaines*, 982 F.2d 1470, 1472 (10th Cir. 1992); *Manders v. Oklahoma*, 875 F.2d 263, 264 (10th Cir. 1989). A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. After the movant has fulfilled his initial burden of showing an absence of a genuine issue of material fact and entitlement to judgment as a matter of law, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000). The nonmoving party "may not rest upon mere allegations" in his pleading to satisfy this requirement. *Anderson*, 477 U.S. at 256. Rather, Federal Rule of Civil Procedure 56 "requires the nonmoving party to go beyond the pleadings and by … affidavits, or by the 'depositions, answers to interrogatories, and admissions

on file,' designate "'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56).

Because the undersigned has relied on the documents attached to the court-ordered Special Report in determining the disposition of Plaintiff's medical claim, Defendants' motion regarding such claims is treated as a motion for summary judgment. *See* Fed. R. Civ. P. 12 (d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

### B. The Exhaustion Requirement

The Prison Litigation Reform Act of 1995 (PLRA) requires a prisoner to exhaust all available administrative remedies before resorting to a § 1983 action in federal court. Specifically, 42 U.S.C. § 1997e(a) provides as follows: "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* "[E]xhaustion is mandatory under the PLRA and ... unexhausted claims cannot be brought in court." *Jones v. Bock,* 549 U.S. 199, 211 (2007).

A prisoner, such as Plaintiff, successfully exhausts administrative remedies by completing the administrative review process established by the prison grievance procedure. *Id.* at 218. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002).

"To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary,* 511 F.3d 1109, 1112 (10th Cir. 2007). Courts, however, "are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aguilar–Avellaveda v. Terrell,* 478 F.3d 1223, 1225 (10th Cir. 2007).

### 1. ODOC Grievance Process

When determining whether administrative remedies have been exhausted, the Court must look to the grievance process at the institution to which the inmate is confined. As Plaintiff is confined in an Oklahoma Department of Corrections (ODOC) facility, that process is set forth in the Offender Grievance Process, OP-090124. (ECF No. 33-3:1-19).

The ODOC grievance policy first requires an initial, informal attempt to resolve the issue followed by a two-part formal attempt; grievable issues include actions related to medical care. (ECF No. 33-3:6). Attempting an informal resolution starts by speaking with the "appropriate staff within three days of the incident." (ECF No. 33-3:6). Next, the offender must file a request to staff within seven calendar days of the alleged incident. (ECF No. 33-3:6-7). After receiving a response to the request to staff, the inmate may file a formal grievance. (ECF No. 33-3:7-9). The policy provides, "The offender grievance must be submitted by the complaining offender within 15 calendar days of … the date of the response to the "Request to Staff." (ECF No. 33-3:8).

Upon receiving the grievance response from the reviewing authority, the inmate may appeal to the administrative review authority asserting either newly discovered

evidence or probable error committed by the reviewing authority. (ECF No. 33-3:11-12). The final ruling of the administrative review authority will satisfy the grievance process and the inmate will have exhausted available administrative remedies. (ECF No. 33-3:13-14). *See also Thomas v. Parker,* 609 F.3d 1114, 1117 (10th Cir. 2010) ("The ODOC grievance process has a requirement of informal consultation with staff, then three written steps: a Request to Staff form, a formal grievance, and an appeal to the administrative review authority."). Additionally, the ODOC policy also includes the following provision: "There is no mailbox rule regarding submission of requests to staff or grievances or grievance appeals. The document must be received in the appropriate office within the required time frame. Deposit in the mail will not be sufficient to meet time frames." (ECF No. 33-3:18).

### 2. Plaintiff's Attempt to Exhaust Administrative Remedies

Though Plaintiff filed various Requests to Staff and Grievances, for the sake of brevity, this discussion will be limited to those attempts that result in the undersigned's recommendation that Defendants' request for summary judgment based on Plaintiff's alleged failure to exhaust be denied.

On March 7, 2014, Plaintiff submitted a Request to Staff seeking an explanation from Dr. Troutt regarding the discontinuation of his medication, the primary basis of his current lawsuit. (ECF No. 43-7:1). The Request to Staff was returned to Plaintiff, signed and dated March 13, 2014, with a response from Defendant Frech, in which she states only that Plaintiff will have to discuss the matter with Dr. Troutt at his next

appointment. (ECF No. 43-7:1). Plaintiff contends, and Defendants do not dispute, that he did not receive the response until March 26, 2014. (ECF No. 43:8).

Plaintiff then submitted a grievance related to the Request to Staff. (ECF No. 43-8:1). Plaintiff contends, and again Defendants do not dispute, that he submitted said grievance on March 27, 2014, the day after he received the Request to Staff response and "within 15 calendar days of the date of the response to the Request to Staff," as seemingly required by ODOC policy. (ECF No. 33-3:8; ECF No. 43:8; ECF No. 43-8:1). However, Defendant Frech returned the grievance to Plaintiff unanswered, informing him:

> Grievance was submitted out of time from … date of response to the "Request to Staff." There is no mailbox rule regarding submission of a grievance report form. The document was not received in the appropriate office within the required time frame.

(ECF No. 43-9:1). In their Motion, Defendants argue that Plaintiff's grievance was not received in the appropriate department until April 1, 2014, outside the 15 calendar days from the date of the Request to Staff response. Defendants contend the grievance was untimely because ODOC does not recognize a mailbox rule. (ECF No. 43-8:1; ECF No. 43-9:1; ECF No. 45:4).

ODOC's competing policies regarding grievance timeliness and the mailbox rule are ambiguous at best. The provision related to grievances states:

> The offender grievance must be **submitted by the complaining party** within 15 calendar days of … the date of the response to the 'Request to Staff' form.

(ECF No. 33-3:8) (emphasis provided). Significantly, the timeliness of a grievance is not dictated by the date of receipt but **by the date of submission**. The prohibition on the mailbox rule provides, in relevant part:

> [T]here is no mailbox rule regarding submission of … grievances. The documents must be received in the appropriate office within the required time frame.

(ECF No. 33-3:18). Reading these provisions together, Defendants' reliance on the lack of mailbox rule appears misplaced because in actuality, Plaintiff did not need the benefit of a mailbox rule as he submitted the grievance within fifteen days of the Request to Staff response. (ECF No. 43-7:1; ECF No. 43-8:1).

However, it is not necessary to navigate the labyrinth these policies have created for Plaintiff because if one concludes that Plaintiff's grievance was untimely, one must also excuse Plaintiff from the exhaustion requirement. As previously noted, "[w]here prison officials thwart or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little*, 607 F.3d at 1250. Defendants have not disputed Plaintiff's contention that, in spite of the fact that the Request to Staff response was dated March 13, 2014, he did not receive it until March 26, 2014. (ECF No. 43:8). Defendants also do not dispute Plaintiff's contention that he submitted his grievance the following day, March 27, 2014. (ECF No. 43-8:1). Yet, Defendants did not receive it until April 1st and then rejected it as untimely. Under Defendants' theory, there was literally no way

Plaintiff could have exhausted his administrative remedies because any grievance he filed after receiving the Request to Staff response would have been untimely.[2]

Moreover, Defendants argue in their Motion for Summary Judgment that Plaintiff never attempted to appeal the rejection of his grievance as untimely. (ECF No. 35:17). In his Response to the same, Plaintiff submitted documentation evidencing his appeal and subsequent response. (ECF No. 43-10; ECF No. 43-11). In the appellate response, the Administrative Review Authority also incorrectly relied on the lack of mailbox rule to affirm Defendant Frech's decision. (ECF No. 43-11). However, she also included a conclusory statement that Plaintiff's initial Request to Staff was untimely. (ECF No. 43-11). In their Reply, though Defendants did not acknowledge their inaccurate assertions that Plaintiff never appealed his grievance, they argued for the first time that Plaintiff's Request to Staff was untimely. (ECF No. 45:3-4).

ODOC policy requires inmates to submit Requests to Staff within seven days of the underlying incident. (ECF No. 33-3:6-7). Plaintiff had an appointment with Dr. Troutt on February 24, 2014 and did not submit his Request to Staff regarding the same until March 7, 2014. (ECF No. 33-6:75-81; ECF No. 43-7). However, prison officials did not reject Plaintiff's Request to Staff as untimely but instead, addressed it on the merits. (ECF No. 43-7).

In *Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007), the Tenth Circuit held, "If a

---

[2] The ODOC grievance policies essentially provide ODOC facilities the benefit of a mailbox rule, while refusing to recognize the same for inmates, *i.e.*, the time for filing a grievance begins to run on the date the Request to Staff response is signed and dated, regardless of the date upon which an inmate actually receives it. This dichotomy will create inevitable problems like the one presented here, where an inmate is essentially barred from filing a timely grievance.

prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court." *See also Smith v. Gibson,* No. 10–cv–02559–REB–KLM, 2012 WL 3656331, at * (D. Colo. July 18, 2012) (relying on *Ross* and declining to grant the defendants' dispositive motion based on failure to exhaust where officials had denied the plaintiff's grievances based on a series of mixed administrative responses, including untimeliness, an improper remedy request and the merits)*; Brown v. Gray*, No. 06–3003–JTM, 2011 WL 6091738, at *16 (D. Kan. Dec. 7, 2011) ("[A] defendant waives the exhaustion requirement if it considers plaintiff's defective filings on the merits.").

In *Cannon v Mason*, 340 F. App'x 495, 497-98 (10th Cir. 2009), the Tenth Circuit rejected a district court's finding that an inmate had failed to exhaust his administrative remedies prior to filing suit. The inmate had filed a Request to Staff more than 7 days after the underlying incident, but "[n]evertheless, the RTS is deemed properly filed because [the prison official] accepted the late filing and responded to the RTS on its merits." *Id.* at 497-98 (citing *Ross*, 365 F.3d at 1186).

Plaintiff's initial Request to Staff may have been untimely. However, Defendant Frech accepted Plaintiff's Request to Staff and addressed it on the merits. (ECF No. 43-7). Therefore, the Request is deemed properly filed and the Administrative Review Authority erred on both grounds in refusing to consider Plaintiff's appeal. *Id.* For these reasons, the undersigned finds Defendants' Motion for Summary Judgment based on Plaintiff's alleged failure to exhaust his administrative remedies should be denied.

## C. Deliberate Indifference

To prevail on an Eighth Amendment claim under 42 U.S.C. § 1983, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Supreme Court clarified the standards applicable to a claim that a prison official has been deliberately indifferent to an inmate's medical needs in *Farmer v. Brennan*, 511 U.S. 825 (1994) and set forth the now familiar two pronged inquiry, comprised of an objective and subjective component. In *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005), the Tenth Circuit Court of Appeals provided a thorough summary of the law applicable to such claims:

> The prisoner must first produce objective evidence that the deprivation at issue was in fact "sufficiently serious." We have said that a "medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second guessing in the guise of an Eighth Amendment claim. Moreover, a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain ."

> The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind. The subjective component is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." A prison medical professional who

serves "solely ... as a gatekeeper for other medical personnel capable of treating the condition" may be held liable under the deliberate indifference standard if she "delays or refuses to fulfill that gatekeeper role."

*Id.* at 751 (citations omitted).

"To show deliberate indifference to his serious medical needs the plaintiff must demonstrate that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Baker v. Wilkinson*, No. CIV–13–140–JHP–SPS, 2014 WL 298140, at *5 (E.D. Okla. Jan. 28, 2014) (internal citations and quotations omitted). "'Medical records of sick calls, examinations, diagnoses and medications may rebut an inmate's allegations of deliberate indifference.'" *Id.* (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)).

With these standards in mind, the undersigned finds that the record fails to support Plaintiff's contention that the medical care he has received while at JCCC is constitutionally deficient or evidences deliberate indifference. Even if one assumes Plaintiff has come forward with enough evidence to raise a fact question as to the objective element of his Eighth Amendment claim, Plaintiff's medical records establish that he cannot meet the subjective element.

Plaintiff alleges that he had to wait an unreasonably long time to initially see Dr. Troutt as Plaintiff arrived at JCCC on January 29, 2014 and his first appointment with Dr. Troutt was not until February 24, 2014. (ECF No. 1:5; ECF No. 43:18-20). He also asserts that Dr. Troutt did not examine him at his February 24th appointment, did not review his medications and discontinued the medications previously prescribed at

Plaintiff's former facility. (ECF No. 1:2,6; ECF No. 43:20-21). However, Plaintiff's medical records do not support these allegations.

On February, 24, 2014, Dr. Troutt renewed at least seven of Plaintiff's prescriptions. (ECF No. 33-6:79-80). Further, Dr. Troutt prescribed ten other types of medication on a Keep on Person (KOP) basis primarily for Plaintiff's gastrointestinal problems as well as for pain. (ECF No. 33-6:80). Dr. Troutt also ordered that Plaintiff would receive a monthly B12 injection. (ECF No. 33-6:80). Similarly, Dr. Troutt renewed additional medications in March 2014 but also advised Plaintiff to limit medications to only those necessary in order to help alleviate gastrointestinal problems. (ECF No. 33-6:70). Plaintiff has been seen by the medical staff on at least a monthly basis, usually by a physician, since his arrival at JCCC. (ECF No. 33-6:3, 6-18, 20-24, 37-39, 43-46, 49-51, 59, 61-64, 67-70, 75-81).

Contrary to the Complaint, Plaintiff has consistently received examinations and medications, including renewal of prescription medication for various conditions. (ECF No. 33-6:3, 6-7, 8-9, 10-12, 13-15, 16-18, 21-23, 24-28, 29-32, 43-45, 46, 49-51, 64, 70, 79-80). As Plaintiff continued to experience gastrointestinal problems, his medications have been adjusted and he has been repeatedly advised regarding his diet. Plaintiff has also had multiple x-rays related to various conditions, including heart problems, back pain, shoulder pain and his gastrointestinal problems. (ECF No. 33-6:4, 36, 42, 45, 55-56).

Plaintiff complains that Dr. Troutt has refused to order Plaintiff six small meals per day, which was allegedly prescribed by Plaintiff's previous physicians. (ECF No.

43:28-29). The record shows that Plaintiff has been prescribed a medical diet while at JCCC but he has refused it, against medical advice, because it is not the medical diet he prefers. (ECF No. 33-6:57-60). Courts have been very clear that the Eighth Amendment "does not guarantee a prisoner the treatment of his choice." *Sherman v. Klenke*, ___ F. Supp. 3d _____, 2014 WL 4436628, *14 (D. Colo. 2014) (citing *Ledoux v. Davies*, 961 F.2d 1536, 1527 (10th Cir. 1992). *See also Feder v. Sposato*, No. 11–CV–193, 2014 WL 1801137, at *9 (E.D. N.Y. May 7, 2014) ("where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, [a court] will not second guess the doctors").

Plaintiff also complains that even though JCCC has several elderly inmates, they have to wait in the "pill line" outside in order to obtain prescription medications. (ECF No. 1:5). To the extent Plaintiff intends to raise a claim on behalf of other inmates, the undersigned notes that an action brought under Section 1983 must be based on a violation of the plaintiff's personal rights and not on the rights of someone else. *Swoboda v. Dubach*, 992 F.2d 286, 289-90 (10th Cir. 1993) (holding that Section 1983 plaintiff lacks standing to bring claims on behalf of others) (citing *Reynoldson v. Shillinger*, 907 F.2d 124, 125 (10th Cir. 1990).

As to his own allegations, Plaintiff states that the pill line causes him "unnecessary pain and suffering on a frequent basis. Depending on the weather conditions." (ECF No. 1:5). Plaintiff does not allege any injury or a substantial risk of serious harm as a result of having to wait outside in order to obtain his medication, *see*

*Farmer*, 511 U.S. at 837, nor does waiting in an outside line fall beyond the "minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). *See Flores v. Morgan,* No. C08–5621 RJB/KLS, 2010 WL 3341599, at *7 (W.D. Wash. Aug. 2, 2010) (holding that the plaintiff's allegations that he was forced to go to the pill line in wheelchair in inclement weather, including "0 or below weather," was insufficient to state an Eighth Amendment violation as he did not allege a substantial risk of serious harm or injury); *Reed v. Richards*, No. S91–143(P), 1992 WL 396863, at *8 (N.D. Ind. Dec. 31, 1992) (finding that requiring inmate to travel two blocks in inclement weather up to four times daily did not rise to the level of an Eighth Amendment violation).

While not determinative, medical records evidencing frequent examinations, diagnoses and medications can rebut an inmate's allegations of deliberate indifference. *Baker*, 2014 WL 298140, *5. Plaintiff's medical records show that he has received consistent medical care, including numerous prescription as well as over-the-counter medications for his various medical conditions. He has had almost monthly examinations and medication adjustments, as well as x-rays and monthly B12 injections. Plaintiff cannot establish that Defendant Troutt has acted with deliberate indifference to Plaintiff's medical needs. Accordingly, the undersigned recommends granting Defendant Troutt's request for summary judgment as to Plaintiff's Eighth Amendment claim.

### D.  Supervisory Liability Claim against Defendant Dowling

Finally, Plaintiff asserts a claim against Defendant Dowling alleging that as Warden, she is liable for the unconstitutional acts of the other Defendants. Given the

above recommendations regarding Plaintiff's claims, Defendant Dowling is entitled to summary judgment. To establish supervisory liability, a plaintiff must come forward with evidence that establishes an affirmative link between the supervisor and an underlying constitutional violation. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). It necessarily follows that supervisory liability is contingent upon a finding of liability by the subordinate. *Martinez v. Beggs*, 563 F.3d 1082, 1092 (10th Cir. 2009) (defendant could not be found liable under a theory of supervisory liability "when there was no violation of [plaintiff's] constitutional rights"). Therefore, Defendant Dowling's request for summary judgment against Plaintiff's second claim should be granted.

## IV. OTHER PENDING MOTIONS

Plaintiff filed a Petition for Emergency Injunction requesting that Defendants be required to send him to an outside specialist and also be required to follow the same specialist's recommendations. (ECF No. 17). To obtain a preliminary injunction, a party must establish: (1) "a substantial likelihood of success on the merits;" (2) "irreparable harm to the movant if the injunction is denied;" (3) "the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party;" and (4) "the injunction, if issued, will not adversely affect the public interest." *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). In light of the above reasoning supporting the granting of Defendants' Motion for Summary Judgment, the undersigned recommends that Plaintiff's Petition for Emergency Injunction be denied as moot.

Plaintiff also filed a Motion for Extension of Time and Conduct and Complete Discovery (ECF No. 36). In this Motion, Plaintiff argued that Defendants did not submit with the Special Report or their dispositive motion all of the documents relevant to his efforts to exhaust his administrative remedies. (ECF No. 36:2-3). Based on this assertion, he requested an extension of time to respond to Defendants' Motion to Dismiss/Motion for Summary Judgment in order to allow him to conduct discovery and obtain additional documentation. (ECF No. 36:2-4).

The undersigned has already noted that indeed Defendants did not submit to the Court all of the documents relevant to Plaintiff's attempts to exhaust his administrative remedies. Plaintiff already provided the Court with additional documentation and the undersigned concluded that Defendants' dispositive motion should be denied in that regard. Thus, further material and argument related to this issue is unnecessary.

Plaintiff also contended that Defendants did not submit relevant medical policies, guidelines and regulations. (ECF No. 36:2-4). Eighth Amendment claims are generally evaluated under well-established constitutional standards, rather than state guidelines and regulations. While deviation from such guidelines or protocol could arguably support a finding of deliberate indifference in some instances, Plaintiff's medical records establish that he has received consistent, adequate medical care for purposes of the Eighth Amendment. Thus, the addition of medical policies or guidelines would not be beneficial to the questions before the Court and Plaintiff's Motion for Extension of Time to Conduct and Complete Discovery should be denied.

Finally, Plaintiff has filed a Motion to Appoint Expert Witness. (ECF No. 40). In this final Motion, Plaintiff requests that the court appoint an "objective, outside medical witness expert." (ECF No. 40:1). In light of the above recommendations and reasoning supporting the same, the undersigned recommends this motion be denied.

## RECOMMENDATION

After careful consideration of the issues in this case, it is recommended that Defendants' dispositive motion **(ECF No. 35)** be **GRANTED** in part and **DENIED** in part. Specifically, it is recommended that Defendants' Motion to Dismiss as to all claims seeking monetary relief against Defendants in their official capacities be granted. Similarly, it is recommended that Plaintiff's claims seeking monetary relief against Defendant Frech in her official capacity be dismissed on screening for failure to state a claim upon which relief can be granted. It is also recommended that Defendants' Motion to Dismiss as to Count III regarding Plaintiff's right to a grievance procedure be granted. Similarly, it is recommended that Count III as asserted against Defendant Frech be dismissed on screening for failure to state a claim upon which relief can be granted.

Additionally, it is recommended that Defendants' Motion for Summary Judgment based on Plaintiff's failure to exhaust his administrative remedies be denied. It is further recommended that Defendant Troutt's Motion for Summary Judgment as to Plaintiff's Eighth Amendment deliberate indifference claim be granted and the same claim against Defendant Frech be dismissed on screening for lack of personal participation. Finally, it

is recommended that Defendant Dowling's Motion for Summary Judgment against Plaintiff's supervisory liability claim be granted.

In light of the above, the undersigned recommends that Plaintiff's Petition for Emergency Injunction be **DENIED** as moot. **(ECF No. 17)**. Finally, the undersigned recommends that Plaintiff's Motion for an Extension of Time to Conduct and Complete Discovery **(ECF No. 36)** and Plaintiff's Motion to Appoint an Expert Witness **(ECF No. 40)** be **DENIED**.

## NOTICE OF RIGHT TO OBJECT

The parties are hereby advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **April 30, 2015**, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF THE REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** on April 13, 2015.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE